IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JEAN WILLY BERCY, | ) |
| Petitioner, | ) ) ) |
| v. | ) CASE NO. 2:04cv125-F ) (WO) |
| UNITED STATES OF AMERICA, et al., | ) ) ) |
| Respondents. | ) ) |

ORDER ON MOTION AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Petitioner Jean Willy Bercy, an inmate in the custody of the United States Bureau of Prisons (BOP), petitions the Court pursuant to 28 U.S.C. §§ 1331 and 2241 for an order requiring the respondents to show cause for continuing to confine him at Federal Prison Camp (FPC) Montgomery rather than transferring him to a Community Corrections Center (CCC) on or about March 29, 2005. Petitioner also seeks an injunction that (1) prohibits the BOP from considering petitioner's request to transfer to a CCC under a "December 16, 2002 DOJ/BOP policy change" which petitioner contends is invalid, and (2) requires the BOP to consider his request to transfer instead under "BOP's policy as it existed prior to the invalid December 16, 2002 change." Petition at 3.[1]

Petitioner has filed a motion to expedite review of his petition (Doc. #25). Upon consideration of this motion, and for good cause, it is

---

[1] See also petitioner's Motion to Expedite (defining the relief requested by petitioner as "an injunction prohibiting the BOP from considering him for halfway house placement under the new BOP policy.").

ORDERED that the motion to expedite be and hereby is GRANTED. The court has considered this petition on a expedited basis. For the reasons set out below, the court concludes that the petition is due to be dismissed.

## Discussion

Petitioner was sentenced on May 19, 2003 to a 30 month sentence, which he began serving on July 18, 2003. His projected release date is September 15, 2005. Petitioner argues that, under previous BOP policy, he would have been eligible for release to a CCC on or about March 29, 2005; however, under a new BOP policy promulgated in December 2002--which limits CCC placement to the last ten percent of an inmate's sentence, not to exceed six months--he will not be transferred to a CCC until June 29, 2005, or 79 days before his release date. Petitioner contends that the BOP's application of the new rule to him is unlawful.

The December 2002 change in the BOP's policy to which petitioner refers reflects a change in its interpretation of Sections 3621(b) and 3624(c) of Title 18. Section 3621(b) provides, in pertinent part:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>   (1) the resources of the facility contemplated;
>   (2) the nature and circumstances of the offense;
>   (3) the history and characteristics of the prisoner;
>   (4) any statement by the court that imposed the sentence--
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
  In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another....

Section 3624(c) provides:

    (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

Prior to December 2002, the BOP interpreted these sections to permit an inmate to be considered for placement in a CCC at the end of the inmate's sentence "for up to six months, regardless of the length of the sentence ...." Response to Petition at 5. However, according to the Respondents, "[t]hat practice ended in December 2002, in response to guidance from DOJ." Id. at 6. A December 13, 2002 memorandum from DOJ (Department of Justice) construed Section 3624(c) as a limit on the discretion granted by Section 3621(b), and determined that "'the BOP must not transfer inmates to CCC's for any longer than a reasonable portion of the last 10 centum of the time to be served.'" Id. The memorandum was forwarded to the BOP's director on December 16, 2002. Id. The BOP implemented this policy by issuing a December 20, 2002, memorandum stating that "pre-release CCC

designations are now limited in duration to the last 10% of an inmate's prison term to be served, not to exceed 6 months." Id. at 7. See also Drew v. Menifee, 2005 WL 525449 (S.D.N.Y. 2005); Pinto v. Menifee, 2004 WL 3019760 (S.D.N.Y. 2004). It is this change in policy that gives rise to the instant petition.

Petitioner argues that the December 2002 change in BOP policy is invalid because: (1) the BOP failed to publish the new rule in the Federal Register for comment before implementing the change, as required by the Administrative Procedures Act; and (2) the new rule is based on an incorrect reading of 18 U.S.C. §§ 3621(b) and 3624(c) and, thus, is inconsistent with the governing statutes. Petition at 2. The majority of courts that have considered similar challenges to BOP's change of policy have determined that the rule is, indeed, invalid.[2] However, those courts agreeing with petitioners generally have not ordered their transfer to a CCC; instead, they have simply directed respondents to consider the petitioner's transfer to a community confinement center in light of the factors deemed appropriate by the BOP without reference to the BOP policy promulgated in December 2002. See, e.g., Drew, 2005 WL 525449 at 4; Pinto, 2004 WL 3019760 at 14; Hurt v. Federal Bureau of Prisons, 323 F.Supp.2d 1358, 1368 (M.D. Ga. 2003); Estes v. Federal Bureau of Prisons, 273 F.Supp.2d 1301, 1311 (S.D. Ala. 2003).

Petitioner seeks a similar remedy in this action. However, in this case the court concludes that the BOP has in fact exercised its discretion on the basis of the factors set forth in Section 3621(b), and that petitioner has already received the remedy that he seeks – that

---

[2] See Pinto, 2004 WL 3019760 at *4-5 (Collecting cases). Others have reached the opposite conclusion. Id. at *5.

is, a recommendation for placement in a CCC pursuant to the policy in effect before December 2002. To explain why this is the case, it is necessary to examine the BOP's actions subsequent to petitioner's request for consideration under the former CCC transfer policy in some detail.

This action was filed on February 13, 2004. At the time of filing, no recommendation had been made with regard to petitioner's placement in a CCC because he was not within a year of his release date. Response to Petition at 8; Response Exhibits 6, 7. A recommendation concerning CCC placement was projected to occur at petitioner's program review in October 2004, at which his case management co-ordinator was expected to recommend 79 days CCC placement. Response Exhibit 6. According to respondents, if the recommendation were approved by the Community Corrections Manager, petitioner's release date would be June 29, 2005. Response to Petition at 8, Response Exhibit 6.

When petitioner filed his habeas petition with the Warden on February 13, 2004, the Warden treated the petition as an "Inmate Request to Staff." The Warden prepared a response dated February 18, 2004, in which he cited the change in BOP policy:

> The Bureau of Prisons' interpretation of its authority and procedures to place inmates in a Community Corrections Center (CCC) is that an inmate may not be placed in a CCC until he reaches his 10% (pre-release preparation) date. Because your pre-release preparation date is June 29, 2005, this will be the earliest date you will be eligible for CCC placement.

Response Exhibit 8. The Warden added that "*[p]rior to December 16, 2002, an inmate at Federal Prison Camp, Montgomery, serving a 30 month sentence, would have received approximately 3 months CCC placement.*" Id. (emphasis added). Thus, while respondents

admit that, under the old BOP policy, petitioner would have been *eligible* for a 90 month CCC placement," Response to Petition at 9, the Warden's response indicated that petitioner nevertheless would have received only approximately three months' CCC placement under the former policy based on the practice of this particular prison camp in dealing with inmates serving 30 month sentences.

According to her affidavit, Chalon Moore, the temporary Unit Manager at FPC Montgomery, determined that petitioner should receive the usual approximately three month placement in a CCC based on the factors required by Section 3621(b). Her recommendation was based on the following:

> Mr. Bercy is 68 years old and has a moderately short sentence. His overall institutional adjustment has been outstanding. Mr. Bercy has maintained clear conduct and has completed several pre-release courses, including, Stress Management, Aids Awareness, Disease Prevention, Nutrition, Money Management and Dress for Success. He has a high school degree. Mr. Bercy receives monthly Social Security benefits and arrived at FPC Montgomery with $810.00 to deposit in his account. Since his arrival, Mr. Bercy has received over $1,200 from outside funds which is evidence of strong community ties. Mr. Bercy has a release residence with his wife in Miramar, Florida. Based on all these factors, we determined Mr. Bercy will benefit from 79 days in a CCC.

Response Exhibit 6. Moore's affidavit indicates that even under the policy in effect before December 2002 "inmates were not guaranteed to get six months in a CCC." Id.

On May 4, 2004, petitioner submitted an Informal Resolution Form requesting that he be allowed six months at a CCC, rather than CCC designation at or near his 10 percent date. Affidavit in Support of Petitioner's Motion filed September 22, 2004 (Doc. # 21) at 2; Affidavit Exhibit A. The Unit Team at FPC Montgomery denied the request on May 5, 2004,

indicating that petitioner would be reviewed for halfway house placement "in September 2004 or 11 to 13 months before release." Doc. #21 at 2; Affidavit Exhibit A  On June 3, 2004, petitioner submitted a Request for Administrative Remedy to the Warden.  Affidavit Exhibit B.  On June 16, 2004, the Warden issued his response.  Affidavit Exhibit C.  The Warden's decision read as follows:

> This is in response to your request for Administrative Remedy receipted June 3, 2004, wherein you requested a recalculation of your Community Corrections Center (CCC) date based upon the Bureau of Prisons' policy prior to the December 16, 2002, policy change limiting CCC time to a 10% date.
>
> While limits exist to the amount of time an inmate can be placed into a CCC, *each offender's referral to a CCC is individualized and tailored to meet the needs of the offender*.  The Bureau of Prisons' policy concerning CCC placement requires that a number of factors be considered when determining the length of appropriate placement. *When your unit team made your CCC referral, they considered your length of sentence, community resources, institutional adjustment, and public safety.  Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs.  Your community resources were also considered which reveals that you are eligible to receive Social Security Benefits and your family has remained intact.  Incarceration has not changed a secure residence which means you will not have to search for a residence in unfamiliar surroundings.  Additionally, your employment history is evidence that you are a disciplined individual capable of success.*
>
> Given the aforementioned, your request to be released to a CCC prior to your 10% date is denied.

Id. (emphasis added).

Petitioner filed a regional appeal on July 12, 2004.  Affidavit Exhibit D. The appeal was rejected and returned on July 15, 2004, because the Administrative Remedy Co-ordinator determined that the appeal was untimely, and that certain attachments had not been provided.  Affidavit Exhibit E.  On August 2, 2004, petitioner received a second notice of

rejection concerning a July 28, 2004 appeal on similar grounds. Affidavit Exhibit G. Thereafter, petitioner received a third rejection notice dated September 24, 2004. Affidavit in Support of Petitioner's Motion filed December 22, 2004 (Doc. # 22) at 3. Petitioner appealed the third rejection notice to the BOP's Office of General Counsel. Id. On December 10, 2004, the administrator for national inmate appeals denied the appeal. Affidavit in Support of Petitioner's Motion filed January 3, 2005 (Doc. # 24), Exhibit B. The administrator wrote:

> Our review reveals the Warden and Regional Director have accurately addressed the issue you raise on appeal. CCC placement is a matter within the authority of the Warden as set forth in Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure. The recommendation for CCC placement and the length of placement involves the review of several factors, including the inmate's current offense, institutional adjustment, individual needs, and existing community resources. Moreover, the U.S. Department of Justice, Office of Legal Counsel, issued an opinion on December 13, 2003, that 18 U.S.C. § 3624(c) limits the transfer of an inmate to a CCC to the last 10 percent of his or her prison term, not to exceed six months. Finally, P.S. 7310.04 does not require that an inmate be placed in a CCC, nor does 18 U.S.C. §3624(c), the controlling statute, require the Bureau of Prisons to place all inmates in a CCC prior to release.

Id. This appeal was "the last administrative remedy available within the BOP." Doc. # 24 at 2.

Thereafter, on January 12, 2005, Unit Manager Michael Stephens completed a program review report in which he determined that petitioner should be recommended for 60-79 days CCC placement. Respondents' Response to Order (Attachment A to Stephens affidavit). Stephens' affidavit indicates that this recommendation "was made with the old

BOP policy in mind." Id. (Stephens affidavit at 1).[3]  According to Stephens, "*[u]nder either the new or old BOP policy I determined that 60 days was a reasonable amount of halfway house time.*" Id. (Stephens affidavit at 2) (emphasis added).  Stephens made this determination based on the factors cited by Moore, *infra*, and these additional considerations:

> First, inmate Bercy has maintained strong community ties throughout his incarceration.  Second, inmate Bercy's family has remained intact and, as reflected in the Pre-sentence investigation, he remains in contact with his four adult children.  Third, inmate Bercy has adequate financial support in the form of retirement income, and income from his spouse.  Furthermore, Bercy's program review report indicates that he received approximately $1500.00 over the six months preceding January, 2005. ... These income sources will supplement additional income inmate Bercy will receive once he is employed.  Finally, inmate Bercy had a 2 day furlough in September 2004, to re-establish community ties. ... At the time of the CCC referral, arrangements were being made for Bercy to receive a second furlough of five, instead of two, days.  This furlough was awarded and enjoyed by inmate Bercy over the period January 24-28, 2005.

Id. (Stephens affidavit at 2).

Thus, although BOP officials cite the December 2002 policy change in their responses to petitioner's requests for a March 29, 2005, transfer to a CCC, it is clear that the decision to transfer petitioner for 79 days was "individualized and tailored" to meet his needs for CCC placement based on the BOP's analysis of the transition time required by this particular inmate, and that the CCC referral would have been the same under either the old policy or the new one.  As a result, the court concludes that the December 2002 policy change actually had no practical effect on petitioner's CCC placement, and petitioner has already received the benefit of any remedy the court could order in this case if petitioner prevailed.

---

[3] Stephens notes that he was "advised to make the assessments pursuant to the old BOP policy because of the splits in the courts." Id.

A federal court may not give opinions upon moot questions or abstract propositions, and "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." Troiano v. Supervisor of Elections in Palm Beach County, Fla., 382 F.3d 1276, 1282 (11th Cir. 2004).[4]  Accordingly, this court declines to reach petitioner's challenge to the lawfulness of the BOP's 2002 policy change, as no meaningful relief could be ordered by the court in his case.  As Stephens' affidavit makes clear, BOP did consider petitioner's request to transfer to a CCC under "BOP's policy as it existed prior to the invalid December 16, 2002 change" after this lawsuit was filed, which is the relief sought by petitioner.[5]  The court finds no reasonable expectation that any application of the new CCC referral policy will actually occur with regard to this petitioner after the termination of this suit.  Thus, since this case is effectively moot, it is nonjusticiable and the court lacks jurisdiction to entertain it. Troiano, 382 F.3d at 1281.

## Conclusion

---

[4] See also Seay Outdoor Advertising, Inc. v. City of Mary Esther, Fla., 397 F.3d 943, 946 (11th Cir. 2005) ("[M]ootness is a jurisdictional question under Article III, which must be raised by the court.").

[5] Petitioner has also received the benefit of the order he sought requiring the respondents to show cause for continuing to confine him at FPC Montgomery rather than transferring him to a CCC on or about March 29, 2005 in the form of the court's order for response to the petition and respondents' subsequent responses. Petitioner's request for an injunction prohibiting the BOP from considering petitioner's application to transfer to a CCC under the December 2002 BOP policy change is also mooted by the BOP's application of its former policy to his case.

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the petition be DISMISSED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **May 17, 2005.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 3rd day of May, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE